UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 12-CV-4263 (JFB) (AKT)
_____

5381 PARTNERS LLC,

Plaintiff,

VERSUS

SHAREASALE.COM, INC.,

Defendant.
_____

**MEMORANDUM AND ORDER**
September 23, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff 5381 Partners LLC ("plaintiff" or "5381") brings this action for fraud, breach of contract, conversion, and unjust enrichment against Shareasale.com, Inc. ("defendant" or "ShareASale"). 5381 and ShareASale entered into an agreement where ShareASale marketed 5381's products on the internet, and 5381 paid ShareASale commissions for successful purchases. 5381 alleges that it paid ShareASale over $100,000 in fraudulent commissions based upon transactions that never occurred.

Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(3), to dismiss the action for improper venue or, in the alternative, to transfer the action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Illinois. For the reasons set forth below, the Court grants defendant's motion to transfer. Accordingly, the action is transferred to the Northern District of Illinois.

In particular, the Court finds that the contract at issue contained a presumptively enforceable forum selection clause wherein the parties agreed to litigate any claims arising from defendant's services in Illinois. Plaintiff has not rebutted the uncontroverted evidence that its employees had to affirmatively click to accept the Merchant Agreement (which contained the forum selection clause) before it could become a merchant through ShareASale. By affirmatively accepting the Merchant Agreement, plaintiff agreed to be bound by all of the terms contained therein, including the forum selection clause, even if its employees did not take the time to read through the agreement in its entirety before denoting their acceptance. Moreover, plaintiff has not submitted any facts that

would make the enforcement of that clause unreasonable or unjust, nor does it allege facts from which this Court could conclude that the clause is invalid. Accordingly, defendant's Illinois forum selection clause is valid and enforceable.

In addition, the other discretionary factors courts consider in determining whether to transfer venue weigh strongly in favor of transfer in this case. For example, the locus of operative facts in this action lies within northern Illinois. Moreover, plaintiff has failed to demonstrate that litigating this case in Illinois, as opposed to New York, would be inconvenient or unjust, or that it would be financially prejudiced by such a transfer. Because this action could have appropriately been brought in the Northern District of Illinois, a balancing of the relevant factors weighs in favor of transfer, and the interests of justice are served by transfer in these circumstances, the Court, in the exercise of its discretion, grants defendant's motion to transfer this case.[1]

I. BACKGROUND

A. The Complaint

The following facts are taken from the complaint and are not findings of fact by the Court.

Defendant sells online advertising, matching merchants (entities that wish to advertise online) with affiliates (entities willing to place advertisements on their websites). (Compl. ¶ 9.) When a consumer clicks on a merchant's advertisement and subsequently makes a purchase on the merchant's website, the merchant pays both the affiliate and defendant a commission. (*Id.*)

In 2005, 5381 and ShareASale entered into an agreement whereby ShareASale arranged the placement of advertisements of plaintiff's product on affiliate websites. (*Id.* ¶ 1.) Plaintiff alleges that, "[i]n addition to commissions on legitimate sales, over a six-year period, [ShareASale] took over $100,000 in fraudulent commissions from 5381 based upon transactions that had not in fact taken place." (*Id.*)

B. Procedural History

Plaintiff filed this lawsuit on August 24, 2012. On January 7, 2013, defendant filed a motion to dismiss. Plaintiff filed an opposition to that motion on February 7, 2013, and defendant replied on February 21, 2013. The Court held oral argument on March 15, 2013. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

A. Rule 12(b)(3) Motions

Enforcement of a forum selection clause is an appropriate basis for a motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See TradeComet.com LLC v. Google, Inc.* ("*TradeComet.com LLC II*"), 647 F.3d 472, 478 (2d Cir. 2011). To survive a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of pleading venue. *See Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). If the court relies only on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue. *See Gulf Ins.*

---

[1] As discussed in detail *infra*, because the Court, in its discretion, concludes that transfer is the appropriate remedy, the Court elects to transfer the case to the Northern District of Illinois pursuant to Section 1404(a), rather than to dismiss the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

*Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Thus, if an evidentiary hearing on the question of venue has not been held, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in plaintiff's favor." *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) (alteration, citation, and internal quotation marks omitted). The Court is permitted, however, to consider facts outside of the pleadings on a Rule 12(b)(3) motion. *See TradeComet.com LLC v. Google, Inc.* ("*TradeComet.com LLC I*"), 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010) (explaining that a court, in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction" (citation and internal quotation marks omitted)).

If there are disputed facts relevant to the venue determination, it may be appropriate for the district court to hold an evidentiary hearing, where the plaintiff must demonstrate venue by a preponderance of the evidence. *See New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) ("A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing . . . [and] no disputed fact should be resolved against [the resisting] party until it has had an opportunity to be heard." (citations omitted)); *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) ("To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." (citations omitted)).

As set forth in detail below, even assuming that plaintiff's facts are true, and drawing all inferences in plaintiff's favor, the Court concludes that the contract between the parties contains a valid and enforceable forum selection clause in which plaintiff agreed to litigate the claims in the instant lawsuit in Illinois. Because plaintiff has alleged no facts that would provide grounds to invalidate that forum selection clause, an evidentiary hearing on this issue is unnecessary.[2]

---

[2] In other cases, this Court has held evidentiary hearings to determine whether a plaintiff assented to a forum selection clause in connection with a website purchase. *See, e.g.*, *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313 (E.D.N.Y. 2010); *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007). The Court has carefully considered whether an evidentiary hearing is necessary based upon the record before it and concludes that such a hearing is unwarranted under the particular circumstances of this case. In order to trigger an evidentiary hearing, a party must submit evidence creating a genuine issue of disputed fact that requires resolution by the Court. Here, as discussed *infra*, defendant has submitted thorough evidence – including a sworn statement and exhibits from its website – demonstrating, *inter alia*, that plaintiff was expressly required to click a specific box to accept the Merchant Agreement (which included the forum selection clause) in order to become a merchant. Plaintiff has submitted no evidence, by affidavit or otherwise, to controvert this evidence in any way. In its opposition to the motion to dismiss, plaintiff argues that an evidentiary hearing is necessary to determine whether the forum selection clause is unconscionable. (Pl.'s Opp'n at 10.) However, plaintiff does not claim that there are any issues of disputed fact regarding the unconscionability of the forum selection clause. At oral argument, plaintiff also claimed that an evidentiary hearing was necessary to allow counsel to cross-examine defendant's witnesses regarding whether the website appeared in 2005 as it does in defendant's submissions. However, plaintiff has not submitted an affidavit from any of its employees, nor has plaintiff submitted any documentary evidence, suggesting that the ShareASale website did not function in 2005 as it is represented in defendant's

B. Section 1404(a) Motions

Rather than dismiss an action due to the existence of a valid and enforceable forum selection clause, a court may exercise its discretionary power to transfer the action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any district or division in which it could have been brought," pursuant to 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The burden of demonstrating that the action should be transferred to another district lies with the moving party, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," *Wildwood Imps. v. M/V Zim Shanghai*, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (explaining that there generally is "a strong presumption in favor of the plaintiff's choice of forum").

III. DISCUSSION

A. Whether Defendant's Forum Selection Clause is Valid and Enforceable

Defendant's argument that venue in the Eastern District of New York is improper is based on the forum selection clause contained within the Merchant Agreement of its website. That clause provides that all claims brought in connection with the Merchant Agreement must be brought in the state or federal courts of Illinois. Defendant contends that plaintiff explicitly agreed to be bound by the clause because, like all prospective merchants, it agreed to be bound by the terms of the Merchant Agreement. As discussed in detail below, because the uncontroverted evidence demonstrates that defendant's mandatory forum selection clause was reasonably communicated to plaintiff, and plaintiff has failed to satisfy its burden of showing that enforcement of the clause would be either unreasonable or unjust, the Court finds defendant's clause – requiring claims to be brought in Illinois – to be valid and enforceable.

---

submissions. Because plaintiff has submitted no evidence to controvert defendant's evidence on this issue or any other issue, no evidentiary hearing is warranted. *See TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 33 (2d Cir. 2011) (summary order) ("We conclude [] that TradeComet failed to raise any material issue of fact as to Google's communication of the terms of the August 2006 agreement that required an evidentiary hearing."); *see also Hancock v. Am. Tel. & Tel., Co.*, 701 F.3d 1248, 1265 (10th Cir. 2012) ("Because Plaintiffs failed to raise a genuine factual dispute regarding acceptance of the U-verse terms at the point of installation, the district court did not err in denying an evidentiary hearing."); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 610 n.14 (E.D.N.Y. 2011) ("Even taking as true all facts submitted by plaintiff, and viewing all facts in the light most favorable to plaintiff, the Court finds that plaintiff has not carried its heavy burden of rebutting the presumption of enforceability of the forum selection clauses. Thus, it is unnecessary to hold an evidentiary hearing."); *Universal Grading Serv. v. eBay, Inc.*, 08-CV-3557, 2009 WL 2029796, at *12 (E.D.N.Y. June 10, 2009) ("Accordingly, because there is no dispute that persons or entities desiring to become eBay users are required to assent to the User Agreement in force at the time, and because plaintiff Callandrello alleges that he became an eBay user, and does not dispute eBay's allegation that he became an eBay user in 2005, when the 2003 User Agreement was in force, I conclude without need for an evidentiary hearing that the forum selection clause contained in the 2003 User Agreement was reasonably communicated to plaintiff Callandrello." (internal citation omitted)).

4

1. Applicable Law

Under the standard set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, forum selection clauses are *prima facie* valid and should control questions of venue absent a "strong showing" that enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." 407 U.S. 1, 10, 15 (1972). The Supreme Court has also stated that a forum selection clause can bind the parties even where the agreement in question is a form consumer contract that is not subject to negotiation. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991). Forum selection clause language must, however, be mandatory to be enforced. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs.*, 22 F.3d 51, 52-53 (2d Cir. 1994); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

The Second Circuit has developed a four-step framework to determine the validity of forum selection clauses in the context of motions to dismiss. Under this framework, a clause is "presumptively enforceable" if the moving party can demonstrate the following: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory rather than permissive in nature; and (3) the claims involved are subject to the clause. *See Phillips*, 494 F.3d at 383. In the final step, the burden then shifts to the non-moving party who, to overcome the presumption of enforceability, must make a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen*, 407 U.S. at 15); *see also Carnival Cruise Lines*, 499 U.S. at 595 (finding that plaintiffs failed to satisfy the "heavy burden of proof" required to invalidate clause for "inconvenience").[3]

---

[3] As discussed in detail *infra*, the Merchant Agreement at issue also contains a choice of law provision mandating that the agreement be governed by Illinois law. In the past, "[s]everal courts in this Circuit have puzzled over what law to apply to this analysis when the contract also contains a choice of law provision." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09 Civ. 7268, 2009 WL 4907060, at *2 (S.D.N.Y. Dec. 21, 2009). Some district courts within the Circuit have suggested that "the first and fourth steps of the analysis – whether the clause was communicated to the non-moving party and whether enforcement would be reasonable – are procedural in nature and are to be analyzed under federal law," *id.*, while the second and third steps – interpretation of the meaning and scope of a forum selection clause – shall be analyzed under state law, *see Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 409 (S.D.N.Y. 2012) (citing *Phillips*, 494 F.3d at 385 (stating in dicta that "[w]e find less to recommend the invocation of federal common law to interpret the meaning and scope of a forum clause, as required by parts two and three of our analysis")). Here, given that both parties cite to Second Circuit case law and neither party specifically requests application of Illinois law (and neither party argues that the result would be different under Illinois law), the Court will analyze all four steps regarding the enforceability of the forum selection clause under federal law. *See Phillips*, 494 F.3d at 386 ("We will assume from the parties' briefing that they do not rely on any distinctive features of English law and apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause."); *John Wyeth & Bro. Ltd. V. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) ("The parties [] make little reference to English contract law. In view of the parties' briefing, we will assume that they do not rely on any distinctive features of English law and we will therefore base our decision on general contract law principles."); *Renaissance Nutrition, Inc. v. Burkard*, No. 12-CV-691, 2013 WL 1855767, at *4 n.1 (W.D.N.Y. Apr. 11, 2013) (analyzing forum selection clause under general contract law and federal precedent when "the parties

2. Analysis

The forum selection clause contained within defendant's Merchant Agreement on its website is as follows:

> JURISDICTIONAL ISSUES: This Agreement shall be governed by Illinois, USA law (except for conflict of law provisions). The exclusive forum for any actions brought in connection with this Agreement shall be in the state and federal courts in and for the State of Illinois, USA and You consent to such jurisdiction. The application of the United Nations Convention on the International Sale of Goods is expressly excluded.

(Decl. of Brian Littleton ("Littleton Decl.") Ex. C, Merchant Agreement, at 4.)

Defendant has submitted uncontroverted evidence demonstrating that plaintiff could not have become a merchant with ShareASale without first agreeing to the website's Merchant Agreement, which included the forum selection clause. According to Brian Littleton ("Littleton"), defendant's founder and CEO, merchants "encounter two screens in the process for signing up for ShareASale." (Littleton Decl. ¶ 5.) On the first screen, a merchant enters basic information, such as name, website, and tax-ID number. (*Id.* ¶ 6; Littleton Decl. Ex. A.) Prior to entering the information, the website states: "Make sure to read and understand our Privacy Policy and Terms of Agreement," and that notice contains a hyperlink to a webpage containing the Merchant Agreement. (Littleton Decl. ¶ 6; Littleton Decl. Ex. A.) After merchants complete this page, they are taken to a second page to activate their account. The website advises prospective merchants: "By clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement." (Littleton Decl. ¶ 7; Littleton Decl. Ex. B.) The phrase "Merchant Agreement" is a hyperlink to a webpage containing the Merchant Agreement. (Littleton Decl. ¶ 7; Littleton Decl. Ex. B; Def.'s Reply at 3 n.4.) The merchant must click to active its account and proceed. (Littleton Decl. ¶ 7; Littleton Decl. Ex. B.) Screenshots attached to Littleton's declaration confirm these representations.

Notably, plaintiff does not submit any evidence to dispute defendant's evidence that the process described by Littleton was in place when plaintiff became a merchant. Instead, plaintiff's counsel stated at oral argument that the person who signed up for ShareASale is no longer accessible to the company, and, therefore, that plaintiff's counsel did not know whether that person completed the signup process as described by Littleton and confirmed by the screenshots. Because defendant has submitted uncontested evidence that plaintiff had to encounter the aforementioned sign up process, the Court finds that plaintiff clicked the box confirming that it had agreed to the Merchant Agreement (which included the Illinois forum selection clause). *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-35 (S.D.N.Y. 2012) (explaining that declarations filed by defendant's employees, screenshots of defendant's website, and defendant's current website

---

have not argued that the contractual language at issue should be interpreted under Pennsylvania law"); *Prod. Res. Grp.*, 907 F. Supp. 2d at 409 (holding that, because the parties did not cite to English or Welsh law, "it is appropriate to assume that the Parties do not rely on any distinctive feature of English or Welsh law, and acquiesce to application of federal common law"); *Bluefire Wireless*, 2009 WL 4907060, at *2 (analyzing forum selection clause under federal precedent because the parties did not cite to English law).

indicate that potential members must agree to the website's terms of service, which included a forum selection clause, in order to join the site, thereby negating the force of plaintiff's argument that he does not remember agreeing to the website's forum selection clause when he joined).

The Court must next consider whether the fact that plaintiff agreed to the Merchant Agreement indicates that defendant's forum selection clause was reasonably communicated to it. Several courts across the United States have engaged in a developing discussion of what conditions and actions may manifest one's assent to contractual terms over the Internet. Thus, to determine whether defendant's clause was, in fact, reasonably communicated to plaintiff, the Court places this case on the spectrum of such cases.

The Second Circuit has held that "a consumer's clicking on a [] button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the [] button would signify assent to those terms." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002). At issue in *Specht* was an arbitration clause contained in license terms on a website that plaintiffs allegedly accepted when they downloaded a plug-in program from the site. The Second Circuit explained that when plaintiffs were prompted to download free software from the site at the click of a button, they could not see a reference to any license terms that they would be accepting by clicking because the sole reference to any license terms was on a screen that the plaintiffs could have only seen if they decided to scroll down before first acting on the invitation to download. *Id.* at 31-32. Noting that "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there," the Second Circuit concluded that a "reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms," and that the plaintiffs could therefore not be said to have assented to defendant's arbitration clause when they clicked to download the site's plug-in program. *Id.* at 32. However, the Court noted that "contracts arising from Internet use" have been found in situations where there is "much clearer notice than in the present case that a user's act would manifest assent to contract terms." *Id.* at 33 (citing cases).

Since *Specht*, courts have found such "clearer notice" that Internet user actions will amount to contractual assent in cases involving conspicuous browsewrap agreements and in cases involving clickwrap agreements. In a browsewrap agreement, "website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen." *Fteja*, 841 F. Supp. 2d at 836 (citation and internal quotation marks omitted)). A browsewrap agreement "usually involves a disclaimer that by visiting the website – something that the user has already done – the user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperlink." *Id.* at 837. Several courts have enforced browsewrap agreements where the circumstances indicated that website users "'must have had actual or constructive notice of the site's terms, and have manifested their assent to them,'" *id.* at 836 (quoting *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937-38 (E.D. Va. 2010)), *i.e.*, whether the hyperlink to the terms and conditions of use was made apparent to the average user. A clickwrap agreement, by contrast, requires a user to take more affirmative action; the user must click an "I agree" box after being

7

presented with a list of the terms and conditions of use in order to receive access to a particular product. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129 n.18 (2d Cir. 2012) (explaining the difference between clickwrap and browsewrap agreements). Forum selection clauses contained in clickwrap agreements have been enforced by numerous courts within this Circuit. *See, e.g.*, *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 08 Civ. 5463, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011); *TradeComet.com LLC I*, 693 F. Supp. 2d at 377-78; *Person*, 456 F. Supp. 2d at 496-97; *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451-52 (E.D.N.Y. 2004).

In *Fteja*, the Southern District of New York recently contemplated a hybrid of a browsewrap and a clickwrap agreement. 841 F. Supp. 2d at 835-41. The court described defendant Facebook's Terms of Use as "somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but also somewhat like a clickwrap agreement in that the user must do something else – click 'Sign Up' – to assent to the hyperlinked terms. Yet, unlike some clickwrap agreements, the user can click to assent whether or not the user has been presented with the terms." *Id.* at 838. In determining whether Facebook's Terms of Use had been "reasonably communicated" to plaintiff, given that consumers were required to take further action not only to assent to the terms, but also to view them, the court considered relevant Supreme Court and Second Circuit contract precedent outside of the Internet context. The court cited *Carnival Cruise Lines*, where the Supreme Court upheld a forum selection clause on the back of a cruise ticket even though the clause became binding at the time of purchase, and the purchasers only received the actual ticket containing the clause subsequent to the purchase. 499 U.S. at 587. The court also referenced *Effron v. Sun Line Cruises, Inc.*, where the Second Circuit held that the forum selection clause contained on the back of a ticket bound plaintiffs at the moment they accepted their tickets, even though they had merely been referred to that clause (rather than shown it) in promotional materials that they received prior to their purchase. 67 F.3d 7, 11 (2d Cir. 1995). Based on these two non-Internet cases, as well as cases in which pure browsewrap and pure clickwrap agreements over the Internet were enforced, the *Fteja* court reasoned that "clicking the hyperlinked phrase [on Facebook's website] is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else." *Fteja*, 841 F. Supp. 2d at 839. Accordingly, the court held that because plaintiff was "informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences," Facebook's Terms of Use were "reasonably communicated" to plaintiff. *Id.* at 840.

The instant case presents circumstances that are quite analogous to those in *Fteja*, and the Court agrees with the *Fteja* court's analysis. Unlike the license terms at issue in *Specht*, defendant's reference to its Merchant Agreement appears on the same screen as the button a prospective merchant must click in order to activate its account. (*See* Littleton Decl. Ex. B.) Plaintiff did not need to scroll or change screens in order to be advised of the Merchant Agreement; the existence of, and need to accept and consent to, the Merchant Agreement was readily visible. Moreover, whereas Facebook's Terms of Use were referenced below the button a prospective user had to click in order to assent, defendant's reference to its

Merchant Agreement appears adjacent to the activation button (*id.*), thereby making it even more clear that prospective merchants of ShareASale are aware that by clicking the button to activate their account, they manifest their assent to the Merchant Agreement.[4]

Plaintiff argues that it is not bound by the forum selection clause because the Merchant Agreement never appeared on the screen during sign up and activation. (Pl.'s Opp'n at 5.) As to the fact that plaintiff had to click on a hyperlink to view the Merchant Agreement (rather than view the agreement on the same page where it had to indicate its assent to the terms), the Court agrees with the *Fteja* court's analogizing of this situation to cruise tickets – plaintiff was shown precisely where to access the Merchant Agreement before it agreed to them, and it should have clicked on them in the same way that one is expected to turn over a ticket to learn of its terms. Moreover, plaintiff was required to click to activate its account, and the button plaintiff was required to click appeared next to the statement, "By clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement." Thus, plaintiff had to click to denote its acceptance of the Merchant Agreement, which contained the forum selection clause. In such circumstances, "'[a] reasonably prudent offeree would have noticed the link and reviewed the terms before clicking on the acknowledgement icon.'" *Fteja*, 841 F. Supp. 2d at 841 (alteration in original) (quoting *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008)).[5]

Although plaintiff argues that the facts of this case are analogous to *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd* 380 F. App'x 22 (2d Cir. 2010), that case is entirely distinguishable. In *Hines*, the court found that plaintiff did not have actual notice of an arbitration clause contained within Overstock.com's Terms and Conditions of Use when defendant's affidavit "conclusory states that by accessing Overstock's website, an individual accepts Overstock's Terms and Conditions – but, crucially, does not explain how a site-user such as Plaintiff is made aware of the Terms and Conditions." *Id.* at 367. Notably, in that case, defendant did not submit any evidence to rebut plaintiff's assertion that she "could not even

---

[4] The Court notes that, in determining that the forum selection clause was reasonably communicated to plaintiff, it is solely relying on the second page of the sign up process (in which a prospective merchant must click to activate its account and is informed that "By clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement"). The Court does not rely on the preceding sign up page, which merely advises users to "Make sure to read and understand our Privacy Policy and Terms of Agreement," and does not require a click to confirm that the merchant has accepted the Merchant Agreement.

[5] Moreover, the fact that plaintiff had to scroll through the Merchant Agreement after clicking on the hyperlink in order to get to the provision containing the forum selection clause does not affect the Court's analysis. *See, e.g.*, *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 322 (E.D.N.Y. 2010) (explaining that "[a] person who checks the box agreeing to the terms and conditions of a purchase on an internet site without scrolling down to read all of the terms and conditions is in the same position as a person who turns to the last page of a paper contract and signs it without reading the terms," and thus concluding that "forum selection clauses are 'reasonably communicated' to a webpage user even where a user simply has to scroll down a page to read the clause" (citing *Feldman v. Google*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) ("That the user would have to scroll through the text box of the Agreement to read it in its entirety does not defeat notice because there was sufficient notice of the Agreement itself and clicking 'Yes' constituted assent to all of the terms.")) (additional citations omitted).

see the link to [the Terms and Conditions] without scrolling down to the bottom of the screen – an action that was not required to effectuate her purchase." *Id.* In contrast, in this case, defendant has submitted a declaration and accompanying screenshots detailing that a merchant is clearly advised of the Merchant Agreement, and plaintiff has not submitted any evidence that it did not follow this activation process. Unlike in *Hines*, where the "website did not prompt her to review the Terms and Conditions and [] the link to the Terms and Conditions was not prominently displayed," *id.*, ShareASale's website has a link to the Merchant Agreement on its activation page, warns merchants that "[b]y clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement," and requires merchants to click to activate an account.

In sum, the Court concludes that plaintiff assented to ShareASale's Merchant Agreement, meaning that the forum selection clause contained therein was reasonably communicated to it.

As to the second and third steps of the analysis, the Court concludes that defendant's forum selection clause is mandatory, and that the claims in this lawsuit are subject to the clause. The choice of forum is mandatory in this instance because specific language regarding venue has been included in the clause, specifying that "exclusive forum" for all claims is in the "state and federal courts in and for the State of Illinois" (Littleton Decl. Ex. C at 4). *See Phillips*, 494 F.3d at 386 (language providing that "any legal proceedings that may arise out of [the agreement] are to be brought in England" is mandatory (alteration in original and internal quotation marks omitted)); *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (holding that "all disputes arising hereunder shall be submitted to the exclusive jurisdiction of the Courts of England and Wales" was mandatory forum selection clause); *cf. Salis v. Am. Exp. Lines*, 331 F. App'x 811, 813 (2d Cir. 2009) (summary order) ("Whether a forum selection clause is mandatory depends on its language, and generally courts will not enforce a clause that specifies only jurisdiction in a designated court without any language indicating that the specified jurisdiction is exclusive."). Additionally, the claims in this suit are subject to the clause because the clause governs "any actions brought in connection with" the Merchant Agreement (Littleton Decl. Ex. C at 4). *See, e.g.*, *Salis*, 331 F. App'x at 814 (finding that a clause that, by its terms, applied to "[a]ny claim or dispute arising under or in connection with" a particular bill of lading applied to claims at issue in the case, as those claims pertained to the bill).[6]

Plaintiff argues repeatedly throughout its opposition to defendant's motion that the forum selection clause is "oppressive and its enforcement would cause unfair surprise verging on the unconscionable." (Pl.'s Opp'n at 8.) However, plaintiff has not met its heavy burden of establishing that the enforcement of defendant's mandatory forum selection clause, which was reasonably communicated to it, would be

---

[6] Nor is the clause's application affected by the fact that plaintiff's fraud claim sounds in tort, and not contract, because the viability of that claim depends on the same operative facts as the claim for breach of contract. *See Bluefire Wireless*, 2009 WL 4907060, at *3 ("[A] forum selection clause will also encompass tort claims if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if the resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract." (citation and internal quotation marks omitted)).

unreasonable. A clause is unreasonable if: (1) its incorporation into the agreement was the result of fraud or overreaching; (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citing *M/S Bremen*, 407 U.S. at 10, 15, 18 and *Carnival Cruise Lines*, 499 U.S. at 595-96). Although plaintiff argues that litigating this dispute in Illinois "would cause undue oppression" because plaintiff "has literally zero connection to the State of Illinois" (Pl.'s Opp'n at 10), "Second Circuit case law is clear that mere difficulty and inconvenience is insufficient to establish the unreasonableness of enforcing a forum selection clause," *Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 396 (S.D.N.Y. 2012). Plaintiff has not submitted any evidence that litigating this case in Illinois would be "impossible," *Phillips*, 494 F.3d at 393, and courts have routinely upheld forum selection clauses that require a party to litigate a dispute in a foreign nation (as opposed to just a different state as in this case), *see Jalee*, 908 F. Supp. 2d at 396-97 (upholding forum selection clause requiring New York plaintiff to conduct arbitration in South Korea); *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 618 (E.D.N.Y. 2011) (upholding forum selection clause requiring New York plaintiff to litigate dispute in a Vatican court); *Farrell v. Subway Int'l, B.V.*, No. 11 Civ. 08, 2011 WL 1085017, at *5-6 (S.D.N.Y. Mar. 23, 2011) (upholding forum selection clause requiring Irish plaintiff to conduct arbitration in New York).

Similarly, there is no indication or evidence that defendant's forum selection clause was the result of fraud or overreaching, or that its enforcement would be against public policy under New York law. Although plaintiff argues that the Merchant Agreement is a "classic contract of adhesion" (Pl.'s Opp'n at 9), courts have routinely upheld forum selection clauses that were not the product of an arms-length negotiation. *See, e.g.*, *Carnival Cruise Lines*, 499 U.S. at 593; *Brodsky v. Match.com LLC*, No. 09 Civ. 5328, 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) ("[A] forum selection clause is not unenforceable even if it appears in a contract of adhesion, including so-called 'click wrap' contracts . . . ." (internal citation omitted)); *Person*, 456 F. Supp. 2d at 493-98 (stating that Google's AdWords user agreement was a contract of adhesion but upholding forum selection clause in the agreement). Notably, "there is no indication that [defendant] set [Illinois] as the forum in which disputes were to be resolved as a means of discouraging [merchants] from pursuing legitimate claims" because defendant "has its principal place of business in [Illinois]." *Carnival Cruise Lines*, 499 U.S. at 595; *see also Ward v. Royal Caribbean Cruise Lines, Ltd.*, No. CV 08-1077, 2009 WL 151490, at *3 (C.D. Cal. Jan 22, 2009) (upholding forum selection clause which required all claims to be resolved in same state defendant had its primary place of business); *cf. Callais v. B.S.L. Cruises, Inc.*, No. 92 Civ. 370, 1992 WL 162938, at *2 (S.D.N.Y. June 29, 1992) (upholding forum selection clause which required all claims to be resolved in New York, even though defendants' principal place of business was not in New York because defendants had a "significant presence" in the forum). This Court similarly concludes, in the instant case, that plaintiff has failed to show that the clause is in any way unreasonable.

In sum, because the Court concludes that defendant's forum selection clause was reasonably communicated to plaintiff, is mandatory, governs the claims in this lawsuit, and is not unreasonable, the clause requiring claims to be brought in Illinois is valid and enforceable.

### B. The Effect of Defendant's Forum Selection Clause

The effect of defendant's valid and enforceable forum selection clause depends on whether the Court treats defendant's motion as one for dismissal or as one for transfer. If the case should be dismissed under Rule 12(b)(3), the presence of a valid and enforceable forum selection clause is determinative. If, however, the case should be transferred under Section 1404(a), defendant's forum selection clause is merely one factor – albeit, a significant one – in the analysis. For the reasons set forth below, the Court, in its discretion, concludes that transfer pursuant to Section 1404(a) is in the interest of justice.

#### 1. Applicable Law

When a plaintiff violates a valid forum selection clause, either dismissal for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or transfer under Section 1404 is appropriate. "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). The remedy chosen determines how much weight is given to the existence of a valid and enforceable forum selection clause.

When a party argues that a case should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure because venue is improper, a valid forum selection clause is controlling. *See TradeComet.com LLC II*, 647 F.3d at 478-79 (explaining that when a forum selection clause permits suit in an alternative federal forum, a court may enforce it under Rule 12(b)(3) and dismiss the case). Thus, if a party seeks to enforce a valid forum selection clause via a Rule 12(b)(3) motion, a court may dismiss the action. *Id.*; *Phillips*, 494 F.3d at 382 (2d Cir. 2007) (affirming dismissal of plaintiff's breach of contract claim through a Rule 12(b)(3) motion based on a forum selection clause); *TecFolks, LLC v. Claimtek Sys.*, 906 F. Supp. 2d 173, 178 (E.D.N.Y. 2012).

Conversely, the presence of a valid forum selection clause is but one aspect of a court's analysis of a Section 1404(a) transfer motion. *See Stewart Org.*, 487 U.S. at 31 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)."); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (per curiam) ("[T]he presence of a forum selection clause [is] but one factor in the district court's consideration of fairness and convenience under section 1404(a)." (citation omitted)); *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, No. 05 Civ. 6745, 2008 WL 833230, at *3 (S.D.N.Y. Mar. 26, 2008) ("Forum selection clauses are properly considered as an additional factor in a § 1404 analysis."). Thus, although the existence of a valid forum selection clause may be a "significant factor" in a court's determination of whether or not to transfer a case pursuant to Section 1404(a), it is not dispositive; in addition to the presence of a valid forum selection clause, a court contemplating transfer must also consider the other discretionary factors related to convenience and the interests of justice. *See*

*Stewart Org.*, 487 U.S. at 29 ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus [in deciding a motion to transfer]."); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) ("The existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions.").

2. Analysis

Because defendant has moved to dismiss this action or, in the alternative, to transfer the case, the effect of defendant's valid and enforceable forum selection clause depends on the remedy the Court elects.

Although defendant has expressed a preference for dismissal, it has not argued that transfer would be inappropriate. Instead, defendant has moved, in the alternative, for transfer of this action to the Northern District of Illinois. In addition, given that the parties are currently engaging in discovery, the Court deems it likely that plaintiff will simply re-file its claims in Illinois if they are dismissed by this Court. Courts have found the "extra expense and delay required if a case is dismissed only to be refiled in another district to justify transfer over dismissal." *AJZN, Inc. v. Yu*, 12-CV-3348, 2013 WL 97916, at *14-15 (N.D. Cal. Jan. 7, 2013) (citing cases); *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855, 862 (N.D. Cal. 2010) ("Dismissal would force Plaintiff to incur additional fees and delay by refiling in the Southern District of New York. The Court therefore concludes that justice is best served by transfer, rather than dismissal."). Finally, as discussed in detail *infra*, after conducting the transfer analysis required under Section 1404(a), the Court finds that transferring this case would be in the interest of justice.

For all of these reasons, the Court, in its discretion, concludes that transfer, rather than dismissal, is the appropriate remedy in this instance. As a result, the existence of defendant's valid and enforceable forum selection clause is but one factor in the Court's Section 1404(a) transfer analysis, discussed in detail below.

A. Transfer Analysis

To determine whether transferring this case would be in the interest of justice, the Court must conduct a fact-specific inquiry. As discussed *supra*, the forum selection clause is a significant factor in favor of transfer, however, "[t]he existence of a forum selection clause cannot preclude the [Court's] inquiry into the public policy ramifications of [the] transfer decision[]." *Red Bull Assocs.*, 862 F.2d at 967. For the reasons discussed in detail below, having analyzed the various "other factors relevant to whether transfer would promote 'the convenience of parties and witnesses' and 'the interest of justice,'" *Fteja*, 841 F. Supp. 2d at 841 (quoting 28 U.S.C. § 1404(a)), the Court concludes that transfer is warranted in this instance.

1. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In determining whether to transfer venue, courts examine (1) whether the action could have been brought in the proposed forum, and (2) whether "the transfer would promote the convenience of parties and witnesses and would be in the

13

interests of justice." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org.*, 487 U.S. at 29.

"'Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.'" *Fteja*, 841 F. Supp. 2d at 832 (quoting *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Instead, the factors should be applied and weighed in the context of the individualized circumstances of the particular case. Moreover, the moving party has "[t]he burden of establishing the need for a change of forum." *Wildwood Imps.*, 2005 WL 425490, at *3.

2. Analysis

a. Whether This Action Could Have Been Brought in the Northern District of Illinois

As a threshold matter, the Court must determine whether this action could have been brought in the Northern District of Illinois. Diversity of citizenship forms the basis for federal jurisdiction in this case. 28 U.S.C. § 1391(b) states that, in diversity cases, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Additionally, under Section 1391(c)(2), a defendant that is a corporation "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Plaintiff does not dispute defendant's assertion that ShareASale's principal place of business is within the Northern District of Illinois. Therefore, the Northern District of Illinois is a permissible venue under § 1391(b)(1) and (c)(2). *See*, *e.g.*, *Indus. Quick Search, Inc. v. Miller, Rosado & Algois, LLP*, No. 09-CV-1340, 2013 WL 4048324, at *4 (E.D.N.Y. Aug. 9, 2013) ("The Court [] finds that venue is proper in the Southern District under § 1391(b)(1) and (c)(2) because all Defendants reside in New York and MR & A, as a corporate entity, is subject to that court's personal jurisdiction."); *SBAV LP v. Porter Bancorp, Inc.*, No. 13 Civ. 372, 2013 WL 3467030, at *3 (S.D.N.Y. July 10, 2013) ("[Defendants] are Kentucky

corporations with principal places of business in Louisville, Kentucky. Accordingly, venue would be proper in the Western District of Kentucky.").

b. Discretionary Factors

Because this action could have been brought in the Northern District of Illinois, the Court must next determine whether the action should be transferred there. As discussed *supra*, the Court has "broad discretion" in this determination, and "notions of convenience and fairness [should be] considered on a case-by-case basis." *D.H. Blair & Co.*, 462 F.3d at 106 As discussed in detail below, the Court concludes that these factors, on balance, weigh in favor of transfer.

i. The Forum Selection Clause

As discussed in detail *supra*, the Court concludes that defendant's forum selection clause – requiring any and all claims arising out of or related to the Merchant Agreement to be brought in the state and federal courts of the Illinois – is valid and enforceable. Thus, that the parties agreed that the proper forum for this type of action would be either the state or federal courts of Illinois is a "significant factor" in the Court's analysis weighing in favor of transfer. *Stewart Org.*, 487 U.S. at 29.

ii. The Locus of Operative Facts

To ascertain the locus of operative facts, courts look to "the site of the events from which the claim arises." *Nova Grp., Inc. v. Universitas Educ., LLC*, No. 11-CV-342, 2011 WL 5570793, at *2 (D. Conn. Nov. 16, 2011) (citation and internal quotation marks omitted). Defendant argues that the locus of operative facts is Illinois "because the claims in this case arise from the alleged fraudulent invoicing and collection of payment by ShareASale in connection with 5381's use of its service." (Def.'s Mem. at 18-19.) The Court agrees.

The individuals who allegedly improperly billed plaintiff work in Illinois. Although plaintiff retained defendant's services from New York, that fact is not especially relevant to defendant's alleged wrongful conduct. Instead, plaintiff's claims will turn largely on what defendant's employees did and what motivated their actions. *See Berger v. Cushman & Wakefield of Pa., Inc.*, No. 12 Civ. 9224, 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (rejecting plaintiffs' argument that locus of operative facts was New York because plaintiffs' "injuries have a direct connection to New York," and holding that locus of operative facts was where the fraud was planned and executed).

Moreover, with respect to plaintiff's breach of contract claim in particular, "the locus of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 12 Civ. 5297, 2013 WL 788054, at *8 (S.D.N.Y. Mar. 4, 2013). Thus, as between New York and Illinois, Illinois is clearly the locus of operative facts because the alleged breach occurred in Illinois by ShareASale's employees. *See*, *e.g.*, *id.* at *9 (explaining that plaintiff's breach of contract "theory turns on business activities among . . . defendants that undisputedly occurred in Kansas, not New York," and that the "locus of operative facts" factor, therefore, "emphatically favors the District of Kansas"); *Fteja*, 841 F. Supp. 2d at 841-42 (holding that the locus of operative facts "appears to be California" when the breach

15

was "carried out" in California by Facebook employees, and stating that "courts addressing motions to transfer cases sounding in contract have not considered [the fact that plaintiff experienced his harm in his home state] in determining the locus of operative facts"); *see also JDA eHealth Sys. Inc., v. Chapin Revenue Cycle Mgmt., LLC*, No. 10 C 7781, 2011 WL 2518938, at *9 (N.D. Ill. June 23, 2011) ("[T]he situs of material events in a breach of contract case is where the business decisions causing the breach occurred." (citations and internal quotation marks omitted)).

### iii. Convenience of Witnesses

"The convenience of the forum for witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted," *ACE Am. Ins. Co. v. Bank of the Ozarks*, 11 Civ. 3146, 2012 WL 3240239, at *11 (S.D.N.Y. Aug. 6, 2012) (citation and internal quotation marks omitted), and "the convenience of non-party witnesses is accorded more weight than that of party witnesses," *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (citation and internal quotation marks omitted). Defendant argues that "this is at most a neutral consideration, given that the suit involves two corporate entities located in different states . . . ." (Def.'s Mem. at 20.) The Court agrees. Because neither party has specified how either forum would inconvenience key witnesses (especially non-party witnesses), the Court affords this factor no weight.

### iv. Location of Documents

With respect to the location of documents, defendant has stated that documents relevant to plaintiff's claims are located at its Illinois headquarters. (Def.'s Mem. at 19.) Although this factor therefore favors transfer, the Court does not view it as particularly significant given that we live in a technological age, where electronic document production has become the norm in litigation. *See, e.g., ESPN*, 581 F. Supp. 2d at 548 ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."). Moreover, this factor is not entitled to great weight because defendant has not indicated that transporting documents or other physical evidence from Illinois would be particularly burdensome. *See Larew v. Larew*, 11 Civ. 5771, 2012 WL 87616, at *5 (S.D.N.Y. Jan. 10, 2012) ("[T]he location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer." (alteration, citation, and internal quotation marks omitted)).

### v. Convenience of the Parties

The Court recognizes that "[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 316 (N.D.N.Y. 2007) (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997)) (alteration in original). However, where the parties have agreed upon a forum in a forum-selection clause, as the parties have done here, the convenience of the parties factor generally weighs heavily in favor of adjudicating the case in the chosen forum. *See, e.g., Falconwood Fin. Corp. v. Griffin*, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) ("In a case where the parties have already agreed to a particular forum, the 'convenience of the parties' weighs heavily in favor of hearing the case in the designated court.");

*Richardson Greenshields Secs., Inc. v. Metz*, 566 F. Supp. 131, 134 (S.D.N.Y. 1983) ("[T]he forum-selection clause is determinative as to the convenience of the parties."). Moreover, although plaintiff argues that "it would be manifestly unfair, prejudicial and inconvenient for [p]laintiff to litigate this dispute in Illinois" (Pl.'s Mem. at 11), it has failed to articulate any substantial inconvenience by having to litigate this case in Illinois. This factor therefore weighs strongly in favor of transfer.

vi. Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted); *see also Fteja*, 841 F. Supp. 2d at 833 ("[B]ecause a court's discretion to transfer an action must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the plaintiff's choice of forum." (alteration, citation, and internal quotation marks omitted)). However, courts have noted that the weight given to this factor is significantly diminished where, as here, the operative facts did not occur in the forum chosen by plaintiff. *See, e.g., Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009); *Wagner*, 502 F. Supp. 2d at 317 ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum . . . ." (citation and internal quotation marks omitted)).

Moreover, plaintiff's choice of forum is not entitled to great deference in this case because, as discussed *supra*, there exists a valid and enforceable forum selection clause that reflects an earlier, contractually agreed upon choice of forum by the plaintiff. *See, e.g., Ran-Mar, Inc. v. Wainwright Bank & Trust Co.*, No. 08-cv-159, 2008 WL 4559844, at *3 (D. Vt. Oct. 9, 2008) ("Ordinarily a valid contractual forum selection clause will overcome deference to a plaintiff's choice of forum, because it is 'treated as a manifestation of the parties' preferences as to a convenient forum.'" (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995))); *Strategic Mktg. & Commc'ns, Inc. v. Kmart Corp.*, 41 F. Supp. 2d 268, 273 (S.D.N.Y. 1998) ("When a § 1404(a) motion involves a forum selection clause and the language of the clause is mandatory, rather than permissive, deference to the plaintiff's choice of forum is inappropriate."). Thus, although plaintiff believes that venue should remain in this District, a number of factors weigh strongly in favor of transfer – namely, the fact that the parties previously chose Illinois as the appropriate forum for cases like this one through a valid and enforceable forum selection clause, and that the locus of operative facts is centered in Illinois.

vii. Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). However, "this factor is entitled to little weight where both parties are corporations." *Student Advantage, Inc. v. Int'l Student Exchange Cards, Inc.*, No. 00 Civ. 1971, 2000 WL

1290585, at *8 (S.D.N.Y. Sept. 13, 2000). In addition, "where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Fteja*, 841 F. Supp. 2d at 844 (citation and internal quotation marks omitted).

Plaintiff argues that "the relative financial means of the parties is highly disparate." (Pl.'s Mem. at 11.) However, not only has plaintiff failed to provide any "information demonstrating that [it] would be financially prejudiced by having to litigate in" Illinois, *Quan v. Computer Scis. Corp.*, CV 06-3927, 2008 WL 89679, at *8 (E.D.N.Y. Jan. 7, 2008), but plaintiff's complaint admits that its products have generated more than $65 million in revenue between 2002 and 2012 (Compl. ¶ 8). Thus, this factor is afforded no weight.[7]

\*\*\*

In sum, after carefully considering the parties' submissions and the applicable law, the Court concludes, in its discretion, that the defendant has met its burden of demonstrating that a balancing of the transfer analysis factors, as well as the totality of the circumstances and the interests of justice, warrants transfer of this action to the Northern District of Illinois.

Plaintiff has not pointed to any evidence or persuasive reason as to why transfer would be improper. Accordingly, the Court grants defendant's motion to transfer the case.

IV. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion to dismiss this case and grants defendant's motion to transfer the proceedings. The Clerk of the Court is directed to transfer this action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2013
Central Islip, NY

\* \* \*

Plaintiff is represented by Benjamin Kincaid Semel and Robert Justin DeBrauwere, Pryor Cashman LLP, 7 Times Square, New York, NY 10036. Defendant is represented by Adam Bialek, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP 150 East 42nd Street, New York, NY 10017.

---

[7] Even if the Court were to afford this factor some weight in favor of plaintiff, this factor would not tip the scales in favor of plaintiff due to the numerous factors that strongly weigh in favor of transfer. *See Fteja*, 841 F. Supp. 2d at 844 ("Since the relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change but is instead but one of several factors for the court to consider, it makes little sense to reject transfer on a ground [plaintiff] has not advanced and where the Court has no evidence in a case where essentially all the other factors weigh in favor of transfer." (alteration, internal citation, and internal quotation marks omitted)).